UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Matosantos Int'l Corp.

      v.

Civil No. 21-cv-317-LM
Opinion No. 2023 DNH 080 P

Hartford Casualty Insurance Co. &
Twin City Fire Insurance Co.

## O R D E R

Plaintiff Matosantos International Corporation ("Matosantos") brought this insurance coverage suit against defendants Hartford Casualty Insurance Company and Twin City Fire Insurance Company (together, "Hartford"). The suit relates to workers' compensation insurance coverage under a Hartford-issued policy (the "Policy") for a May 2018 motor vehicle accident involving one of Matosantos's employees, Javier Vasquez, in New Hampshire. Hartford denied coverage, and Matosantos subsequently brought this suit. Hartford and Matosantos filed cross-motions for summary judgment (doc. nos. 36, 38). Matosantos's motion is granted in part and denied in part. Hartford's motion is denied.

## STANDARD OF REVIEW

Summary judgment is proper only if the moving party can demonstrate that there is no evidence in the record to support a judgment for the nonmoving party. Borges v. Serrano-Isern, 605 F.3d 1, 5, 8 (1st Cir. 2010); see also Fed. R. Civ. P. 56(a). If the moving party succeeds in making that showing, "the burden shifts to the nonmoving party, who must, with respect to each issue on which she would bear

the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges, 605 F.3d at 5. The nonmoving party's failure to meet that burden by reference to "significantly probative" materials "of evidentiary quality" entitles the moving party to summary judgment. Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018). In evaluating a motion for summary judgment, the courts must view the evidence in the light most favorable to the nonmoving party, must draw all reasonable inferences in that party's favor, and may neither make credibility determinations nor weigh the evidence. Harris v. Scarcelli, 835 F.3d 24, 29 (1st Cir. 2016); Hicks v. Johnson, 755 F.3d 738, 743 (1st Cir. 2014).

When parties file cross-motions for summary judgment, "the standard does not change." Motorists Commercial Mut. Ins. Co. v. Hartwell, 53 F.4th 730, 734 (1st Cir. 2022); Dusel v. Factory Mut. Ins. Co., 52 F.4th 495, 503 (1st Cir. 2022). The court views each motion for summary judgment separately and draws all reasonable inferences in favor of each respective nonmoving party. Hartwell, 53 F.4th at 734.

## BACKGROUND

I. Matosantos employs Javier Vasquez as Vice President of the Southeast Region of the United States

Matosantos provides auditing and merchandising services for non-party Matosantos Commercial Corporation ("Commercial"). Commercial supplies products, such as frozen fruit, to retail supermarkets and other stores.

Matosantos employs "auditors" who travel around the United States visiting stores that carry Commercial's products.  Those employees audit store inventory, train store staff on how to handle and merchandise Commercial's products, and develop Commercial's relationships with store management.  Commercial and Matosantos work closely together to determine the stores and locations to be visited by Matosantos auditors.  Ultimately, Commercial tells Matosantos which stores and regions its auditors must visit.

In 2014, Matosantos hired Javier Vasquez as an auditor.[1]  Vasquez's job title was Vice President of the Southeast region of the United States.  Doc. no. 36-7 at 7.  Initially, Vasquez primarily visited stores in Florida, which is where Commercial's products were concentrated.  As time went on, Commercial's business grew, and Vasquez spent time elsewhere.  Vasquez's visits were generally concentrated in the southern United States.

From time to time, Matosantos sent Vasquez on "special assignments" to visit stores in the northeast United States.  Of note, Vasquez traveled to New Hampshire to audit stores for approximately one week in June 2016 and another week in July 2016.  Vasquez again audited stores in New Hampshire for a short time in April 2017.  After the April 2017 audit, however, the stores carrying Commercial's products in New Hampshire ceased doing so.  Without any stores carrying Commercial's products in New Hampshire, no further audits were planned.

---

[1] Vasquez had previously worked for Commercial in Puerto Rico.

Vasquez drove from store to store and state to state in a rental car, which Matosantos rented in Mississippi for 11-month terms.[2]  When not on the road, Vasquez usually stayed with friends and family in Florida.  Doc. no. 36-7 at 55.

The record does not establish with specificity how much time Vasquez spent in Florida or in any particular state.  Hartford submitted Vasquez's expense reports from the six months preceding the accident, which provide some insight into where Vasquez spent his time.[3]  The expense reports indicate that Vasquez spent approximately 11% of the six months preceding the accident in Florida.  The only state in which Vasquez spent more time was New York (approximately 15%).[4]  However, there are some gaps in the six-month period for which no location is indicated.

In September and October 2017, Walmart began stocking Commercial's products at stores in New England, including New Hampshire.  In November 2017, Commercial mapped a route of Walmart stores which included New Hampshire.

---

[2] Vasquez explained during his deposition that Matosantos rented the cars for 11-month terms because that term had the best rate.

[3] Many of the supporting documents are low-resolution scans and are difficult to parse.  See doc. no. 41-6.  The court relies in large part on Hartford's summary of the documents, doc. no. 41 at 18 and doc. no. 41-1 at 8-9, in setting out these facts. Matosantos did not object to the accuracy of the summaries, which are in any event not dispositive as to either party's motion.  Using this data, the court calculated the percentage of time Vasquez spent in each state.

[4] The expense reports show that, other than Florida and New York and prior to the accident in New Hampshire, Vasquez spent brief periods of time in Virginia, Tennessee, New Mexico, Arizona, California, Texas, Louisiana, Puerto Rico, Mississippi, Rhode Island, Vermont, and Maine.

4

Commercial planned to send Matosantos's auditors on that route between the end of November and mid-December 2017.  A Matosantos principal was copied on the email about the route.

However, Commercial ultimately did not send Matosantos's auditors to visit the New Hampshire Walmart stores in November or December 2017.  Rather, Vasquez was not directed to visit the New Hampshire Walmart stores until April 26, 2018.  Vasquez arrived in New Hampshire to audit the stores on May 23, 2018.

On May 31, 2018, Vasquez was seriously injured in a car accident after leaving a Walmart store he had audited.

II.    <u>Matosantos's workers' compensation policy with Hartford</u>

At the time of the accident, Matosantos held a workers' compensation insurance policy issued by Hartford.  Matosantos had held a workers' compensation insurance policy with Hartford since 2014, which renewed yearly on January 20. The Policy's effective date at the time of Vasquez's accident was January 20, 2018. Matosantos filed a claim under the Policy a few days after the accident, on June 4, 2018.

The Policy provides insurance to Matosantos for workers' compensation benefits that must be paid under different states' workers' compensation laws. Coverage is provided through two alternate routes: (1) Information Page Item 3.A. and Part One of the Policy, and (2) Information Page Item 3.C. and Part Three of the Policy, which is known as "Other States Insurance."

Item 3.A. states that "Part one of the policy applies to the Workers Compensation Law of the states listed here."  Doc. no. 36-26 at 3.  Florida and New York are listed as Item 3.A. states.  Part One of the Policy states that Hartford will "pay promptly when due the benefits required of [Matosantos] by the workers compensation law."  Doc. no. 36-26 at 7.  The term "workers compensation law" is defined, in relevant part, to mean "the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page."  Id.

Item 3.C. states that "Part Three of the policy applies to the states, if any, listed here: ALL STATES EXCEPT ND, OH, WA, WY, US TERRITORIES, AND STATES DESIGNATED IN ITEM 3.A. OF THE INFORMATION PAGE."  Doc. no. 36-26 at 3.  Part Three of the Policy states, in its entirety, as follows:

### A. How This Insurance Applies

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

**B. Notice**

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

Doc. no. 36-26 at 10-11.  Section 3.A. ¶ 4 and Section B are the most critical provisions of Part Three for purposes of this case.  The court will refer to Section 3.A. ¶ 4 as the "30-day notice clause" and Section B as the "at-once notice clause."

The Policy also classifies Matosantos's employees into different categories (such as salespersons or clerical employees) and calculates estimated premiums based in part on those classifications.  Vasquez was identified as "salespersons or collectors – outside"[5] and as a Florida employee.  Doc. no. 36-23; doc. no. 36-26 at 4.

III.   Hartford denies Matosantos's claim.

After investigating, Hartford denied Matosantos's claim related to Vasquez's accident on the grounds that it was not covered under the Policy.  Hartford asserted that Item 3.A. did not apply because the workers' compensation laws of neither New York nor Florida applied.[6]  Hartford asserted that Item 3.C. did not apply because Matosantos's work in New Hampshire was not temporary and because New Hampshire has a law which requires coverage under Item 3.A. as opposed to Item 3.C.

---

[5] Outside salespersons or collectors are typically "employee[s] who spend[] time traveling to locations to sell the products."  Doc. no. 36-19 at 6.

[6] Matosantos does not contend at summary judgment that coverage applies through the coverage under Item 3.A. for New York.

IV.   <u>Claims</u>

Matosantos brings five counts in its complaint.  Counts 1 through 4 all relate to enforcing the Policy and providing Matosantos coverage for Vasquez's accident. In Count 5, Matosantos alleges that Hartford breached the implied covenant of good faith and fair dealing by deliberately and wrongfully denying coverage under the Policy.

## DISCUSSION

The parties filed cross-motions for summary judgment on all of Matosantos's claims.  Matosantos contends that it is entitled to coverage under either Item 3.A. of the Policy (for Florida) or Item 3.C. (for New Hampshire).  As to Item 3.A., Hartford argues that Florida law does not cover Vasquez's employment.  As to Item 3.C., Hartford argues that Matosantos failed to provide notice under the 30-day notice clause or, alternatively, the at-once notice clause.  Either way, Hartford contends that the Policy does not cover any benefits that may be due to Vasquez.

The court first reviews the rules for interpreting contracts and insurance policies as well as the purpose of workers' compensation laws generally.  Then, the court considers whether either party is entitled to summary judgment in its favor as to coverage under Item 3.A. or Item 3.C.  The court also briefly addresses Hartford's argument that the Policy does not provide coverage because Matosantos violated New Hampshire law by failing to procure appropriate workers' compensation insurance and Matosantos's claim for breach of the implied covenant of good faith and fair dealing.

I.       New Hampshire Rules for Insurance Contract Interpretation[7]

This case turns largely on the meaning of the Policy's terms.  Interpretation

of a contract and determining whether any terms or clauses are ambiguous is a

question of law for the court.  Moore v. Grau, 171 N.H. 190, 194 (2018).  The court's

goal is to determine the intent of the parties in making the agreement as expressed

by its plain text.  See Trombly v. Blue Cross/Blue Shield of N.H.-Vermont, 120 N.H.

764, 770 (1980).  In attempting to ascertain the parties' intent, the court must

consider the contract "as a whole."  Moore, 171 N.H. at 194.  The court must give

words their "ordinary meaning unless it appears from the context that the parties

intended a different meaning."  Id.  "Dictionaries are of some value . . . to the extent

they inform us of the common understanding of terms."  Hudson v. Farm Family

Mut. Ins. Co., 142 N.H. 144, 147 (1997).

The court should not "perform amazing feats of linguistic gymnastics to find a

purported ambiguity."  See id.  Terms that have clear meaning via a judicial

decision are not ambiguous.  Coakley v. Maine Bonding & Cas. Co., 136 N.H. 402,

410 (1992).

Although the typical rules governing construction and interpretation of

written contracts apply, the insurance context presents some special rules because

people "in general cannot read and understand . . . insurance documents."

DeLancey v. Insurance Co., 52 N.H. 581, 590 (1873); Trombly, 120 N.H. at 770.  To

start, "[i]n a declaratory judgment action to determine the coverage of an insurance

---

[7] During oral argument the parties agreed that New Hampshire law applies to
interpretation of the Policy terms.

policy, the burden of proof is always on the insurer, regardless of which party brings the petition."  Santos v. Metro. Prop. & Cas. Ins. Co., 171 N.H. 682, 685 (2019).  In interpreting an insurance policy's terms, the court must "honor the reasonable expectations of the policyholder."  Trombly, 120 N.H. at 771 (quoting Magnus v. Travelers Ins. Co., 114 N.H. 704, 706 (1974)).  Going further, "an ambiguous policy will be construed in favor of the insured and against the insurer."  Id.

The court should not "presume language in a contract to be mere surplusage." Schleicher & Stebbins Hotels, LLC v. Starr Surplus Lines Ins. Co., --- A.3d ---, 2023 WL 3357980, at *6 (N.H. 2023); Progressive N. Ins. Co. v. Argonaut Ins. Co., 161 N.H. 778, 782 (2011).  But "redundancies abound" in insurance policies, so the court should stay "cautious" when applying the surplusage canon in the insurance context.  Schleicher & Stebbins Hotels, 2023 WL 3357980, at *6; see also Smart Commc'ns Collier Inc. v. Pope Cnty. Sheriff's Office, 5 F.4th 895, 899 (8th Cir. 2021) ("[T]he canons of interpretation are not mandatory rules.  They are guides that 'need not be conclusive . . . .  In fact, applying the surplusage canon is inappropriate if it would make the plain text ambiguous.'").

"Any limitation on coverage must be stated in such 'clear and unambiguous terms' that the insured can have no reasonable expectation that coverage exists." Cincinnati Specialty Underwriters Ins. Co. v. Best Way Homes, Inc., 175 N.H. 142, 146 (2022); Santos, 171 N.H. at 686.  If the court finds an ambiguity in a limitation on coverage and "one of the reasonable meanings of the language favors the policyholder, the ambiguity will be construed against the insurer, in order to honor

the insured's reasonable expectations." Cincinnati Specialty Underwriters, 175

N.H. at 146; 17 Williston on Contracts § 49:111 (4th ed. May 2023 update) ("[I]t is

well settled that any ambiguity regarding the exclusion or exception will be resolved

in favor of the insured and coverage, and, to be enforceable, an exclusion or

exception must state clearly and conspicuously what risks are to be excluded.").

"A condition precedent is a provision that makes an act or event contingent

upon the performance or occurrence of another act or event." Santos, 171 N.H. at

688. Generally, words like "if," "on condition that," "subject to," "provided," and

those which are "materially identical" create conditions precedent. Id. "Conditions

precedent are not favored," so courts cannot "construe contractual provisions as

conditions precedent unless required by the plain language of the agreement." Id.

(citing Holden Eng'g and Surveying v. Pembroke Rd. Realty Tr., 137 N.H. 393, 396

(1993)).

II.    Workers' Compensation Laws

The Policy covers benefits required to be paid by Matosantos to employees

under the workers' compensation laws of identified states. "Although separate and

distinct laws have been enacted in every jurisdiction, they are all based on the same

model used in the early part of the twentieth century." Mark Rothstein, et al., 2

Employment Law § 7:1 (6th ed. June 2023 update) (cited as "Employment Law"). A

typical workers' compensation act has several features. Arthur Larson, 1 Larson's

Workers' Compensation Law § 1.01. The core feature is that an employee is

automatically entitled to benefits when he suffers a personal injury arising out of

and in the course of his employment.  Id.; 2 Employment Law § 7:3 ("Workers'
compensation laws were designed to provide employees with expansive protection
against the consequences of employment-related injuries.").  These benefits are
usually cash payments for some partial portion of the employee's wages, as well as
medical expenses.  1 Larson's Workers' Compensation Law § 1.01.  To ensure these
benefits are paid, "the employer is required to secure its liability through private
insurance," although some states use other set ups to ensure benefits are paid.  Id.

III.    Genuine disputes of material fact exist as to whether Matosantos is covered
        under the Policy.

    A.    Coverage under Item 3.A. and Part One

The parties agree that, under Item 3.A. and Part One of the Policy, Hartford
must pay Matosantos's workers' compensation obligations whenever they arise
under New York or Florida law.  The parties further agree that for purposes of
summary judgment only the workers' compensation laws of Florida are relevant,
and, more specifically, that coverage turns on whether Matosantos is required to
pay benefits under Florida Statutes § 440.09(d).  Section 440.09(d) entitles an
employee to benefits if, inter alia, his "employment was principally localized" in
Florida.[8]

---

[8] Section 440.09(d) states, in full:

> If an accident happens while the employee is employed
> elsewhere than in this state, which would entitle the
> employee or his or her dependents to compensation if it had
> happened in this state, the employee or his or her
> dependents are entitled to compensation if the contract of

Matosantos argues that Vasquez is entitled to benefits under § 440.09(d), because his employment was "principally localized" in Florida.  In support, Matosantos contends that Vasquez most frequently visited stores in Florida; that he returned to a base of operations in Florida following his work assignments; and that Matosantos paid his salary out of Florida.

Hartford responds that Vasquez's employment was not "principally localized" in Florida because expense reports indicate that in the six months prior to the accident he spent most of his time outside of Florida and he was responsible for stores in many different states.

The issue turns on the meaning of "principally localized" under § 440.09(d) and whether there are material facts in dispute as to whether Vasquez's employment was "principally localized" in Florida.

The court applies Florida law on statutory construction to interpret the meaning of a Florida statute.  See Fla. Stat. § 440.15 ("[T]he laws pertaining to workers' compensation are to be construed in accordance with the basic principles of statutory construction and not liberally in favor of either employee or employer.").

---

employment was made in this state, or the employment was principally localized in this state.  However, if an employee receives compensation or damages under the laws of any other state, the total compensation for the injury may not be greater than is provided in this chapter.

The parties agree that for purposes of summary judgment that Vasquez's contract of employment was not made in Florida, so the only issue is whether Vasquez's employment was "principally localized" in Florida.  Doc. no. 36-1 at 23; doc. no. 38-1 at 23 & n.93.

The court looks first to the "plain statutory language" to ascertain the legislature's intent. Anderson Columbia v. Brewer, 944 So. 2d 419, 921 (Fla. Dist. Ct. App. 2008) (citing Borden v. East-European Ins. Co., 921 So. 2d 587, 595 (Fla. 2006)). Only if the language is ambiguous or "of doubtful meaning" may the court consider matters extrinsic to the statutory text, such as legislative history. Vegas v. Globe Security, 627 So. 2d 76, 85 (Fla. Dist. Ct. App. 1993) (citing and quoting Shelby Mut. Ins. Co. of Shelby, Ohio v. Smith, 556 So. 2d 393, 395 (Fla. 1990)).

The word "principally" means "most important, consequential, or influential." Principal, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/principally (last visited May 23, 2023); see also Doe v. Salvation Army in U.S., 685 F.3d 564, 571 & n.10 (6th Cir. 2012) (defining "principal" as meaning chief, primary, or most important, and that as an adverb it means "chiefly" or "primarily"). "Principally localized" thus refers to the most important, consequential, or influential location of the employee's "employment contacts." See General Elec. v. DeCubas, 504 So.2d 1276, 1277 (Fla. Dist. Ct. App. 1986).

"[T]he overall temporal distribution" of the employee's "employment engagement" is a "critical" factor in determining the principal locale of employment. Hazealeferious v. Labor Ready, 947 So.2d 599, 605 (Fla. Dist. Ct. App. 2007). But temporal distribution should not be viewed without context. See id. The court must consider other factors, which include where the employee's work was supervised; where the employee received his paychecks; and where the employee located his

base of operations.  See Johnson v. United Airlines, 550 So. 2d 134, 135 (Fla. Dist. Ct. App. 1989).  Courts in other states applying similar tests in similar workers' compensation frameworks have also considered the state in which the insured procured workers' compensation insurance as a relevant employment contact.  See Mendes's Case, 486 Mass. 139, 148 (2020) (surveying the approaches of different states in determining "whether an employment relationship is located within their borders" for purposes of coverage under workers' compensation laws).

Notably, in Johnson v. United Airlines, a flight attendant spent most of her time working outside Florida, in the airspace of various other states.  550 So. 2d at 135.  Nonetheless, the Florida court found that her employment contacts were "principally localized" in Florida.  The court placed great weight on the following facts: her "base of operations" had been in Florida "for many years"; she received her work schedule in Florida; and she was supervised in Florida.  Id.

On the present record, there is a genuine dispute of material fact as to whether Vasquez's employment was principally localized in Florida.  First, taking the evidence in the light most favorable to Hartford, its evidence about the temporal distribution of Vasquez's work is compelling.  Vasquez's expense reports indicate that he spent most of his time outside Florida.  Since temporal distribution is a critical factor, a reasonable jury could weigh this evidence heavily and find that Vasquez's employment was not principally localized in Florida.

But the time Vasquez spent working in Florida is not dispositive.  See Hazealeferious, 947 So.2d at 605.  Vasquez did not spend the majority of his time

working in any one state.  Like the flight attendant in <u>Johnson</u>, his working time was spread across many states.  And Vasquez need not have spent the majority of his time in Florida for a reasonable jury to find that Florida was his employment's principal locale.

There is sufficient evidence from which a reasonable jury could find that Florida is the most important locale of Vasquez's employment.  While not large in absolute terms, Vasquez spent a relatively large proportion of his time in Florida compared to other states.  Matosantos submitted evidence that Vasquez's base of operations was in Florida.  Matosantos procured the Policy, which provides workers compensation insurance with primary coverage in Florida, and Matosantos and Hartford agreed to classify Vasquez as a Florida employee under the Policy.  Viewed in a light most favorable to Matosantos, a jury could find that Florida was the state to which Vasquez's employment had the strongest connection.

For these reasons, neither party is entitled to summary judgment, and Hartford's and Matosantos's cross-motions for summary judgment are denied as to coverage under Item 3.A.

### B.    Coverage under Item 3.C. and Part Three

Matosantos argues that even if it is not covered under Item 3.A., it is covered under Item 3.C. and Part Three.  Hartford contends that Item 3.C. coverage does not apply because Matosantos failed to comply with the 30-day notice clause or, alternatively, the at-once notice clause.  Matosantos responds that neither provision precludes coverage.

1.   <u>A genuine dispute of material fact exists about whether
     Matosantos failed to comply with the 30-day notice clause.</u>

First, as to the 30-day notice clause, Matosantos argues the Policy only

requires notice if it had work on the Policy's effective date and on that date it did

not "have work" in New Hampshire because its employees were not physically

present and working in New Hampshire.  Hartford disagrees and argues that an

insured will "have work" in a state if the insured had "the authority and

responsibility to carry out its operations" in the state.  Doc. no. 41 at 6.

The 30-day notice clause states in full:

> If you have work on the effective date of this policy in any
> state not listed in Item 3.A. of the Information Page,
> coverage will not be afforded for that state unless we are
> notified within thirty days.

Doc. no. 36-26 at 10-11.  The parties are in agreement that the term "work" in this

paragraph generally refers to activities that people engage in to earn a livelihood.

Doc. no. 38-1 at 16 (Matosantos brief in favor of summary judgment); doc. no. 41 at

6 (Hartford objection).  As to the term "have," its most relevant meaning in the

context of the Policy and in relation to the term "work," is to possess, receive, or

acquire.  <u>See</u> Have, Merriam-Webster.com, <u>https://www.merriam-</u>

<u>webster.com/dictionary/have</u> (last visited May 31, 2023); Have, Oxford English

Dictionary (3d ed. last updated March 2023).  Thus, the phrase "have work" in the

30-day notice provision means to possess, receive, or acquire the kinds of activities

that people engage in to earn a livelihood.

Considering those definitions, an insured need not have employees physically

present in a state to "have work" in that state.  It would be expected for a person or

business to say they "have work" in a place even if they are not, at the instant moment, physically performing work in that place. But conjectural or hypothetical work that is not yet possessed, received, or acquired would not be reasonably viewed as "having work."

The context of the Policy bolsters this interpretation. The purpose of other states insurance in Item 3.C. is to provide coverage for incidental or temporary work (in states other than those listed in Item 3.A.) which comes up over the course of the policy period. In other words, work which is not known to the insured when the policy begins. If work in a new state is possessed by the insured when the Policy renews, then it makes sense to require the insured to add that state to Item 3.A. as opposed to relying on coverage under Item 3.C. The insured's work, in that circumstance, is not incidental but planned. The 30-day notice clause provides the insured with a grace period to appropriately modify the policy when it possesses work in a state as of the policy effective date.

Considering the court's construction of the phrase "have work," there is a genuine dispute of material fact about whether Matosantos had work in New Hampshire as of January 20, 2018. The court first takes the evidence in the light most favorable to Hartford. From October 2017, when it began its deal with Walmart, through the effective date of the Policy, Commercial — which worked closely with Matosantos in assigning work to Matosantos's auditors such as Vasquez — knew it was very likely to send Matosantos employees to New Hampshire in 2018, as it had in 2016 and 2017. Commercial went so far as to draw

up a route for Matosantos's auditors to follow in visiting New Hampshire Walmarts. These plans were communicated to Matosantos in late 2017.  Thus, taking the facts in the light most favorable to Hartford, Matosantos knew it had work in New Hampshire as of January 20, 2018.

But taking the evidence in the light most favorable to Matosantos, a jury could also find that Matosantos did not have work in New Hampshire on January 20.  While Matosantos had on occasion audited stores in New Hampshire in 2016 and early 2017, that work was intermittent, irregular, and involved business which Commercial no longer possessed by late 2017.  As of January 20, 2018, Matosantos had no guarantee that work in New Hampshire would occur as it had in the past or knowledge about when that work might happen.  Although Commercial contemplated directing Matosantos to send employees to New Hampshire in late 2017, it cancelled those plans soon afterward.  Matosantos had not been directed to send employees to New Hampshire as of January 20, 2018, and it had no employees in New Hampshire on or around that date.

From those facts, a reasonable jury could conclude that any plans for Matosantos to work in New Hampshire were hypothetical at best on January 20, 2018.  Under this view of the evidence, the 30-day notice clause does not apply.  Cf. Bridgefield Cas. Ins. Co. v. River Oaks Mgmt., Inc., 590 Fed. Appx. 308, 313 (5th Cir. Oct. 27, 2014) (interpreting same language and stating, in dicta, that if the insured "ceased" prior work in a state before the policy's effective date, the 30-day notice clause does not apply).

For these reasons, neither party is entitled to summary judgment on the question of whether the 30-day notice clause precludes coverage.

    2.    <u>The at-once notice clause does not condition coverage on compliance.</u>

If coverage is not precluded under the 30-day notice clause, Hartford argues that coverage under Item 3.C. is precluded because Matosantos failed to comply with the at-once notice clause.  Matosantos disagrees.

The at-once notice clause states:

> **B. Notice**
>
> Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

The term "at once" means "at the same time" or "immediately."  Merriam-Webster.com, https://www.merriam-webster.com/dictionary/at%20once (last visited May 10, 2023); At Once, Oxford English Dictionary (2d ed. 1989) (defining "at once," in relevant part, as "[a]t one and the same time; simultaneously" and "immediately, straightway").  However, the effect of failing to provide notice "at once" is not specified in the Policy text.

   The at-once notice clause neither limits nor conditions coverage in terms that are "clear and unambiguous" such that the insured could have no reasonable expectation that coverage exists.  See Cincinnati Specialty Underwriters, 175 N.H. at 146; Santos, 171 N.H. at 686.  The Policy begins by stating on its Information Page that Item 3.C. includes "all states" (with some specified, irrelevant exceptions).  The Policy states in Part Three that Hartford <u>will</u> provide coverage, in the same way the Policy provides coverage under Item 3.A., for all states shown in Item 3.C.

if Matosantos "begins work . . . after the effective date of this policy and [is] not insured or [is] not self-insured for such work . . . ." Doc. no. 36-26 at 10. There is no dispute that New Hampshire is shown under Item 3.C. Thus, this language expressly provides coverage for New Hampshire.

The at-once notice clause does not place a condition on that express coverage. Rather, the at-once notice clause is a command: "Tell us at once if you begin work." Without a clear and unambiguous limitation on coverage linked to that command, the Policy cannot limit coverage based on failure to provide notice "at once." See Santos, 171 N.H. at 688; Cincinnati Specialty Underwriters, 175 N.H. at 146.[9]

By contrast, the 30-day notice clause, as discussed above, creates a condition precedent to coverage under Item 3.C. Unlike the at-once notice clause, it uses clear and unambiguous language consistent with a condition precedent to coverage: It sets out a condition (notice within 30 days if the insurer has work as of the Policy's effective date) and states that "coverage will not be afforded" without compliance. The Policy also contains a separate exclusions section which likewise states numerous other scenarios in which coverage is excluded, using language consistent with limitations on coverage.

---

[9] While the court relies only on the plain language of the Policy text to come to this conclusion, the extrinsic evidence also indicates that Hartford understood this to be the meaning of the at-once notice clause. Hartford submitted its internal mandatory underwriting guidelines which expound on each provision of the Policy. The guidelines discuss several circumstances in which coverage would be withheld because an insured failed to comply with the 30-day notice clause. Doc. no. 36-31 at 4-5. The guidelines do not, however, contain any discussion or example of withholding coverage because an insured failed to comply with the at-once notice clause. See id.

Hartford invites the court to follow the lead of Accident Fund Insurance Company of America v. Custom Mechanical Construction, Inc., which interpreted an identical at-once notice clause and found that it was a condition precedent to coverage. 504 F. Supp. 3d 913 (S.D. Ind. 2020), aff'd, 49 F.4th 1100, 1107 (7th Cir. 2022). The court reasoned that construing the at-once notice clause as a condition precedent was the only way to read the policy because it made "no sense" that the policy would condition coverage on compliance with the 30-day notice clause but not the at-once notice clause. Id. at 924. Matosantos, on the other hand, directs the court toward a competing view of the same language which concludes that the at-once notice clause is not a condition precedent to coverage. See Premier Automation Contractors, Inc. v. Everest National Ins. Co., No. 19-cv-220-AR, 2022 WL 884784 (D. Ore. Mar. 24, 2022).[10] In Premier Automation, the court contrasted the plain language of the 30-day notice clause and the at-once notice clause, observing that the at-once notice clause — unlike the 30-day notice clause — failed to state "any consequence" for noncompliance. Id. at *3. The court concluded that the only potentially applicable provision was the 30-day notice provision, which the insured

---

[10] The policy at issue in Premier Automation was interpreted under Oregon law, which provides, like New Hampshire law, that the parties' intent be viewed "from the perspective of the 'ordinary purchaser of insurance.'" 2022 WL 884784, at *2 (quoting and citing Capitol Specialty Ins. Corp. v. Chan & Lui, Inc., 274 P.3d 238, 240 (Or. App. 2012)).

had complied with because it had provided notice to the insurer within that

timeframe.  See id.[11]

The court agrees with <u>Premier Automation</u>'s conclusion that the at-once

notice clause is not a condition precedent or limitation on coverage.  The court does

not find persuasive <u>Accident Fund</u>'s holding that the at-once notice clause

conditions coverage on compliance.  <u>Accident Fund</u> rewrites the policy by grafting

the exclusionary language in the 30-day notice clause onto the at-once notice clause.

But as the court in <u>Accident Fund</u> itself observed, the at-once notice clause

read just as it is written does <u>not</u> condition coverage on notice "at once."  To

overcome the absence of language conditioning coverage on compliance, <u>Accident</u>

<u>Fund</u> relied on the distinction between primary coverage (for Item 3.A. states) and

incidental coverage for other states under Item 3.C.  It reasoned — and Hartford

argues now — that the at-once notice clause must be a condition precedent to

coverage because otherwise the insurer would be subject to providing coverage in all

states, a nonsensical result.

That reasoning does not persuade this court.  First, this approach takes the

language in the light that is most reasonable from the insurer's perspective.  New

Hampshire, however, requires the court to honor the reasonable expectations of the

insured, not the insurer.  Trombly, 120 N.H. at 771.  The court cannot rewrite the

Policy to conform to what might have been Hartford's uncommunicated, subjective

---

[11] The court did not discuss whether the insured in fact had work in the
relevant state on the effective date of the policy.

intent as opposed to what is expressed in the Policy's plain language.  If Hartford wanted to condition coverage through the at-once notice clause, it could have added to the Policy clear and unambiguous language effectuating that intent, as it did with the 30-day notice clause.  But it did not.

Second, the purpose of purchasing workers' compensation insurance with "other states insurance" from the view of a reasonable policyholder is to protect it from the risk it may have to pay workers' compensation benefits when an employee is injured during temporary travel to any state which is not one of its primary work centers (those listed under Item 3.A.).  It makes sense, then, that coverage under Item 3.C. would apply to "all states."[12]  Hartford itself observes that this is the purpose of other states insurance.[13]  Construing the Policy to provide such coverage to "all states" — exactly as the Policy text says — is consistent with that view.

---

[12] The exceptions to "all states" further buttress this conclusion.  Item 3.A. states are excluded, since those are already covered.  And the other excluded states are "monopolistic" states, meaning that employers must pay into a state-run insurance fund, so separate insurance coverage is not required.  See Workers' Compensation Tr. Fund v. Saunders, 234 B.R. 555, 562 (D. Mass. 1999) (describing a "monopolistic" state scheme as requiring "payments only to a state-run insurance fund").

[13] This view is again supported by Hartford's internal underwriting guidelines, which state that the purpose of Other States Insurance is "to provide coverage for incidental exposures or temporary coverage in states where an insured has new or temporary operations.  We automatically add coverage for all states except monopolistic states . . . .  Section 3.C. does provide coverage for incidental exposures and new operations the insured begins after policy inception."  Doc. no. 36-31 at 4.  Further, those guidelines list examples of circumstances in which coverage is meant to be provided and one circumstance is "[a] manufacturer's representative making sales calls at locations throughout the country from a base in a state listed in Item 3.A."  Id. at 5.

Hartford also argues that the at-once notice clause would be superfluous unless the court reads it as a limitation or condition on coverage. The at-once notice clause, however, still has meaning even if it is not a condition precedent to coverage or a limitation on coverage. During oral argument counsel for Hartford indicated that notice served a purpose because it would trigger a reevaluation of the policy premiums. Hartford's internal underwriting guidelines similarly indicate that the purpose of the at-once notice clause is so that Hartford can "properly schedule[]" the new state on the Policy for work moving forward. See doc. no. 36-31 at 4 ("Within part 3.C. of the coverage form we require our insured to notify us if work begins in any state so they are properly scheduled on the policy[.]"). And, lastly, as the New Hampshire Supreme Court recently observed, courts should exercise caution when applying the surplusage canon in the context of insurance policy construction. Schleicher & Stebbins Hotels, 2023 WL 3357980, at *6. The court therefore declines to leverage the surplusage canon to write language into the Policy which is not there. See id.; Smart Commc'ns Collier, 5 F.4th 895 at 899.

For these reasons, the court enters partial summary judgment in Matosantos's favor on the limited issue of whether coverage is precluded because it failed to comply with the at-once notice clause. See Fed. R. Civ. P 56(a) (permitting summary judgment on parts of a claim or defense). Coverage is not precluded by the at-once notice clause. With respect to the 30-day notice clause, there is a genuine dispute of material fact as to whether coverage is precluded. That issue is therefore reserved for trial.

C.    <u>Hartford has not shown that coverage is precluded because Matosantos failed to comply with RSA 281-A:5.</u>

In its motion for summary judgment, Hartford also argues that Matosantos violated New Hampshire workers' compensation law, RSA 281-A:5, by failing to procure coverage for New Hampshire under Item 3.A. as opposed to Item 3.C. Hartford contends that the Policy "incorporates the requirements of New Hampshire state law" because it states that its terms which "conflict with the workers compensation law are changed by this statement to conform to that law."

RSA 281-A:5 requires New Hampshire employers to maintain workers' compensation insurance coverage.  A state administrative proceeding is ongoing as to whether Matosantos complied with that state law.  <u>See</u> <u>Appeal of Vasquez</u>, --- A.3d --- (N.H. Sept. 30, 2022) (vacating state administrative finding that Matosantos had failed to prove it procured New Hampshire workers' compensation coverage under RSA 281-A:5 and remanding for further proceedings).

It is, however, unclear how any provision of the Policy conflicts with New Hampshire law so as to preclude coverage in New Hampshire.  Even if the State ultimately concludes that the Policy is insufficient to satisfy New Hampshire's minimum requirements for coverage under RSA 281-A:5, Hartford would still be required to cover Matosantos's liability to the extent the Policy requires Hartford to do so.  Hartford offers no authority suggesting that RSA 281-A:5 renders unenforceable a policy which provides coverage in New Hampshire under Item 3.C. Rather, RSA 281-A:5 simply states that the employer must secure the payment of

26

workers' compensation benefits to employees by, among other options, obtaining appropriate insurance coverage.

But even if there were some reason why a violation of RSA 281-A:5 would preclude coverage under the Policy, Hartford has also failed to persuade the court at this stage that coverage under Item 3.C. would not meet the statutory requirements. Hartford extrapolates from New Hampshire Administrative Rule 303.06 that Item 3.A. coverage is required in New Hampshire and Item 3.C. coverage does not suffice. But Rule 303.06 states only that "coverage" for purposes of RSA 281-A:5 means "New Hampshire workers' compensation insurance." Hartford assigns talismanic significance to Item 3.A. such that it is, in Hartford's view, the only coverage which counts as "New Hampshire workers' compensation insurance." Hartford, however, ignores that Item 3.C. coverage is the same as Item 3.A., albeit with an additional notice requirement. The only other authority cited by Hartford for the proposition that Item 3.C. coverage is insufficient is an insurance agency's blog post. Hartford also submitted its internal underwriting procedures which reiterate Hartford's position that New Hampshire must be listed as an Item 3.A. state if any of the insured's employees work there for any length of time. These materials are insufficient to carry Hartford's burden to show it is entitled to summary judgment as a matter of law as to coverage under the Policy's terms.

IV.    Genuine disputes of material fact exist as to whether Hartford acted in bad faith.

Matosantos and Hartford also filed cross-motions for summary judgment on Matosantos's claim for breach of the implied covenant of good faith and fair dealing.

27

In its motion for summary judgment, however, Hartford did not develop any argument as to summary judgment in its favor.

In every contract – including insurance contracts – there is an implied "obligation of good faith and fair dealing." Lawton v. Great Sw. Fire Ins. Co., 118 N.H. 607, 612 (1978). "[R]easonableness is the touchstone for determining whether an insurer has breached its obligation of good faith and fair dealing." DeVries v. St. Paul Fire & Marine Ins. Co., 716 F.2d 939, 943 (1st Cir. 1983) (applying New Hampshire law). Taking the facts in the light most favorable to either party, there is a genuine dispute of material fact as to whether Hartford declined coverage in good faith. Several genuine disputes of material fact remain which preclude summary judgment, not the least of which is the open question about whether Matosantos was covered under the Policy. Certainly, a jury could find that there was no bad faith if Hartford properly denied Matosantos's claim. A jury could also find that Hartford acted in bad faith if it credits Matosantos's facts and arguments regarding Hartford's investigation and grounds for denial. Therefore, both Hartford's and Matosantos's motions for summary judgment are denied as to Matosantos's bad faith claim.[14]

---

[14] Hartford's objection to Matosantos's motion for summary judgment contains a marginally more developed discussion of the claim. The court considers the arguments made in that objection as arguments for summary judgment in Hartford's favor. But see LR 7.1(a)(1) ("Objections to pending motions and affirmative motions for relief shall not be combined in one filing."). Even so, the court does not find that Hartford is entitled to summary judgment as a matter of law.

## CONCLUSION

The court grants Matosantos's summary judgment (doc. no. 38) in part and denies in part.  It is granted to the extent that the court finds that the at-notice clause does not preclude coverage in this case.  Otherwise it is denied.  The court denies Hartford's motion for summary judgment (doc. no. 36) in full.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 30, 2023

cc:    Counsel of Record